# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| United States of America, | ) | |
|---|---|---|
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION TO SUPPRESS** |
| | ) | |
| vs. | ) | |
| | ) | |
| Willie Israel Navarette, | ) | Case No. 1:18-cr-115 |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendant's motion to suppress filed on August 8, 2018. See Doc. No. 30. The Government filed a response in opposition to the motion on August 21, 2018. See Doc. No. 35. A hearing on the motion was held on March 25, 2019. Both parties filed post-hearing briefs on April 9, 2019. See Doc. Nos. 61 and 63. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

In the early morning hours of May 30, 2018, Williston Police Sergeant Kristiina Ravaska was on patrol in Williston, North Dakota. While on patrol, she observed that a vehicle behind her had the driver's side headlight out, a violation of North Dakota law. At approximately 1:57 a.m., she conducted a traffic stop on the vehicle, a blue 1989 Dodge Durango, for the equipment violation. The dash camera in Sgt. Ravaska's patrol car was not operational. The Williston Police Department does not use body cameras.

The driver was the sole occupant of the vehicle and upon Sgt. Ravaska's request, could not produce a driver's license, proof of insurance, or registration for the vehicle. The driver identified

himself as Willie Navarette. At approximately 2:04 a.m., Sgt. Ravaska called in the name, but police dispatch could not locate a driving record. Dispatch advised that Navarette was on federal supervision. Police Officer Jason Barten arrived on scene to assist while Sgt. Ravaska was running the records check on Navarette. No dash camera video of the incident exists from Officer Barten's vehicle.

Sgt. Ravaska returned to the vehicle. Navarette was still unable to produce his driver's license, but was checking his pockets as if looking for it. Sgt. Ravaska asked if he wanted to step out of the vehicle to check his pockets for his driver's license, and Navarette did so. Navarette testified Sgt. Ravaska ordered him out of the vehicle. When the driver's door opened, Sgt. Ravaska observed in plain view, a loaded magazine for a handgun in the door panel. See Doc. Nos. 60-2 and 60-3. Navarette denied any knowledge of the ammunition magazine and upon asking if possessing such an item was a violation of his supervision, he stated he did not know and attempted to get back into the vehicle. At approximately 2:18 a.m., Sgt. Ravaska informed Navarette that he was not under arrest, but would be detained and asked him to place his hands behind his back. Navarette started pulling away and tensing up. With the assistance of Officer Barten, Navarette was handcuffed. Sgt. Ravaska advised Navarette of his *Miranda* rights and received confirmation he understood them. Navarette consented to a pat down and Sgt. Ravaska located an empty holster for a handgun on his belt. Sgt. Ravaska asked him where he placed the weapon and Navarette stated he wished to remain silent.

While looking into the vehicle from the outside, Officer Barten advised Sgt. Ravaska he could see a handgun located between the front driver's seat and the center console. See Doc. No.

60-5. Sgt. Ravaska was also able to observe the firearm from outside the vehicle. Navarette was placed in Officer Barten's patrol vehicle. Sgt. Ravaska then entered the vehicle and seized the handgun -- a .40-caliber Glock with a seated magazine containing 13 rounds and a single chambered round. See Doc. No. 60-6. Continuing the search of the vehicle, she found two rifles, an assortment of ammunition, and mail addressed to Navarette, all in the passenger compartment. See Doc. Nos. 60-7, 60-8, 60-9, 60-10, 60-11, and 60-12. Upon completion of the search of the vehicle, Navarette was arrested at approximately 2:58 a.m.

Navarette, who was visiting Williston and staying in a hotel at the time of the incident, testified he had purchased the vehicle for $800 two days prior to the traffic stop. He could not recall the name of the person from whom he purchased the vehicle although he believed the seller now lives in Virginia. The seller did not provide Navarette a title for the vehicle. Navarette testified he did not yet have proof of insurance or registration for the vehicle because he had just recently purchased it. His Texas driver's license had been misplaced. When he purchased the vehicle both headlights were working. In addition, prior to being stopped on May 30, 2018, Navarette had stopped at two convenience stores, left the vehicle running while he went inside, and did not observe that either headlight was out when he returned to the vehicle.

The parties dispute whether Navarette was taken to the front of the vehicle and shown that the headlight was out. Navarette testified he did not ask to see the headlight. Sgt. Ravaska testified Navarette asked to see the headlight and she took him to the front of the vehicle and showed him the headlight that was out after she patted him down. Although several photos of the vehicle were taken, none showed the front of the vehicle.

Sgt. Ravaska testified that pursuant to department practice and policy, since Navarette's vehicle was legally parked, it was not towed or impounded. Navarette testified that he contacted his mother about the vehicle a couple days after his arrest, but it was never located.

Navarette was initially charged in state court. The state court charges were dismissed when the federal indictment charging possession of a firearm and ammunition by a convicted felon was returned.

## II.    LEGAL DISCUSSION

### A.    THE STOP OF THE VEHICLE

Navarette contends the stop of the vehicle was unjustified as the headlights on his vehicle were working properly and there is no evidence to support Sgt. Ravaska's testimony that the driver's side headlight was out. The Government contends Sgt. Ravaska's testimony was credible and thus there was a sufficient basis for a traffic stop. As the Government puts it, "there is a stark factual dispute" which will require the Court to make a credibility determination.

Because a traffic stop constitutes a seizure under the Fourth Amendment, an officer must have probable cause or a reasonable suspicion that the vehicle or its occupants are involved in illegal activity before conducting a traffic stop. See United States v. Hollins, 685 F.3d 703, 705-06 (8th Cir. 2012); United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008). Courts assess reasonable suspicion from the point of view of the officer based upon the totality of the circumstances known to the officer at the time. United States v. Zamora-Lopez, 685 F.3d 787, 790 (8th Cir. 2012). A determination of whether probable cause or reasonable suspicion existed is not to be made with the

4

benefit of hindsight, but rather by looking at what the officer reasonably knew at the time. Hollins, 685 F.3d at 706. A reasonable suspicion must be more than a hunch. See United States v. Walker, 555 F.3d 716, 719 (8th Cir. 2009). It is well-established in the Eighth Circuit Court of Appeals that a traffic violation, no matter how minor, provides an officer with probable cause for a traffic stop. United States v. Coleman, 700 F.3d 329, 334 (8th Cir. 2012). "As long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law, the officer has probable cause to conduct a traffic stop." United States v. Coney, 456 F.3d 850, 856 (8th Cir. 2006) (internal quotations ommitted). In this case, it is undisputed that operating a motor vehicle with non-functioning headlight is a violation of North Dakota law. See N.D.C.C. §§ 39-21-01, 39-21-03, and 39-21-46.

The Court had the opportunity to carefully listen to both Sgt. Ravaska and Navarette at the suppression hearing. Sgt. Ravaska's testimony was honest, straight-forward, logical, and credible. The Court has no reason to believe her testimony regarding the headlight was anything less than truthful. While no corroborating evidence was presented, her testimony alone is sufficient for a finding of probable cause. There has been no suggestion that Sgt. Ravaska had any motive to fabricate her testimony.

Suffice it to say, Navarette's testimony was hard to believe. Navarette testified he paid $800 for a vehicle without a title and he could not recall the name of the person he bought it from in Williston. Navarette said he checked out the vehicle inside and outside and purchased it with cash although he was concerned about the title. Further, it seems incredible that a motorist pulled over for a faulty headlight would not ask to see for himself whether the light was in fact not working.

Navarette's prior felony conviction for being a felon in possession of a firearm also hurts his credibility "'because of the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'" United States v. Chauncy, 420 F.3d 864, 874 (8th Cir. 2005) (quoting Cummings v. Malone, 995 F.2d 817, 826 (8th Cir.1993).  The Court notes there is also no evidence corroborating Navarette's version of events, and he has a clear motivation to fabricate his story.

Having carefully listened to both sides of the story at the suppression hearing and observed the demeanor of both Sgt. Ravaska and Navarette, the Court finds Sgt. Ravaska's testimony that the headlight on Navarette's vehicle was not working to be credible.  Based upon the testimony of Sgt. Ravaska, the Court finds as a matter of law that the stop of the vehicle in this case was objectively reasonable and lawful.

### B.	PRESERVATION OF THE VEHICLE

Navarette also complains that the Williston Police Department failed to preserve his vehicle and this failure constitutes a due process violation.  The vehicle was left parked on the side of the road after Navarette was arrested.  Sgt. Ravaska testified the vehicle was legally parked so it was left at the scene pursuant to Williston Police Department policy and procedure.  There was no reason to impound it.  The vehicle has never been located and its whereabouts are unknown.

A defendant's due process rights are violated if the government suppresses or fails to disclose "material exculpatory evidence." United States v. Houston, 548 F.3d 1151, 1155 (8th Cir. 2008) (citing Illinois v. Fisher, 540 U.S. 544, 547 (2004)).  If, however, the evidence is not clearly

exculpatory and instead is merely "potentially useful," then the defendant must establish bad faith on the part of the police to establish a due process violation. Id. (citing Arizona v. Youngblood, 488 U.S. 51, 57 (1988)). In *Houston*, the defendant argued that his due process rights were violated because the officers failed to preserve videotape evidence of a traffic stop that led to the defendant's narcotic's arrest. The Eighth Circuit held that the defendant was required to show bad faith on the part of the officer to establish a due process violation because the videotape presented "potentially useful" evidence, not exculpatory evidence.

There has been no showing of bad faith in this case. Sgt. Ravaska simply followed department procedure. The vehicle had been searched and there was no reason to impound it. Navarette was arrested for weapons violations rather than traffic offenses. Sgt. Ravaska had no way of anticipating what legal arguments he would later raise. The vehicle itself is not exculpatory, but rather simply potentially useful. In light of *Houston*, the Court finds Navarette has failed to establish bad faith in the failure to preserve the vehicle.

### C. <u>DELAY</u>

Navarette contends the traffic stop was prolonged, without reasonable suspicion, in violation of the Fourth Amendment and *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). In *Rodriguez*, the United States Supreme Court held "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Id. at 1612. "An officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." United States

v. Woods, 829 F.3d 675, 679 (8th Cir. 2016). "In the absence of reasonable suspicion, police may not extend an otherwise-completed traffic stop. Id.; Rodriguez, 135 S. Ct. 1615-16. If an officer has reasonable suspicion to justify expanding the scope of the investigation, the extension of the stop does not violate the Fourth Amendment. See Woods, 829 F.2d at 679. To establish reasonable suspicion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" further investigation. Id. (citation omitted). The reasonable suspicion determination is made based upon the totality of the circumstances. Id. The Eighth Circuit has recognized that "a lawful detention may be prolonged for a reasonable time without violating the Fourth Amendment if complications arise while checking identification." United States v. Cloud, 594 F.3d 1042, 1045 (8th Cir. 2010).

The touchstone of Fourth Amendment analysis is always "'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)). In this case, the delay was minimal and largely caused by Navarette's inability to produce a driver's license, registration, and proof of insurance. North Dakota law requires the operator of an automobile to carry all three while operating a motor vehicle. See N.D.C.C. §§ 39-06-16 (license), 39-04-55 (registration card), 39-08-20 (insurance).

Navarette was stopped at 1:57 a.m., a records check was run at 2:04 a.m., he was detained at 2:18 a.m., and arrested at 2:58 a.m. The records check revealed Navarette was on federal supervision and a convicted felon. Sgt. Ravaska observed a loaded ammunition clip in the side panel of the driver's door shortly before she detained Navarette at 2:18 a.m. Sgt. Ravaska then

patted down Navarette and found an empty gun holster on his belt. Where one finds an ammunition clip for a gun and an empty holster for a gun, one might reasonably expect to find a gun as well. These observations, combined with the knowledge that Navarette was a convicted felon on federal supervision, provided reasonable suspicion to prolong the stop. Once an officer completes the purpose of a traffic stop, he may "expand the scope of a traffic stop if he has reasonable suspicion of other criminal activity based on the totality of the circumstances and informed by his training and experience." United States v. Guerrero, 374 F.3d 584, 596 (8th Cir. 2004);Terry, 392 U.S. at 30.

Further investigation was clearly warranted. Only 21 minutes elapsed between the time Navarette was stopped and reasonable suspicion sufficient to prolong the stop arose. Just moments after the clip and empty holster were discovered and Navarette detained, the handgun was found in plain view between the driver's seat and center console. Once the handgun was observed in plain view, there was probable cause for an arrest as Sgt. Ravaska was aware that Navarette was a convicted felon on federal supervision. See United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000) ("probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place"). Under the totality of the circumstances, the Court finds the delay in this case of just more than 21 minutes to be reasonable.

### III. CONCLUSION

The Court has carefully reviewed the entire record, the parties' arguments, the evidence presented at the suppression hearing, and the relevant case law. For the reasons outlined above, the motion to suppress (Doc. No. 30) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 23rd day of April, 2019.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court